UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ADLER ENGINEERS, INC., ADLER GEOSCIENCE, INC., and ADLER ASSOCIATES, INC., | : : : : Civil No. 14-921 (RBK/AMD) |
| Plaintiffs, | : **OPINION** |
| v. | : |
| DRANOFF PROPERTIES, INC., | : |
| Defendant. | : |

**KUGLER**, United State District Judge:

This contract dispute between Plaintiffs Adler Engineers, Inc., Adler Geoscience, Inc., and Adler Associates, Inc. (collectively, "Plaintiffs" or "Adler") and Defendant Dranoff Properties, Inc. ("Defendant" or "Dranoff") stems from a dispute over the attempted sale by Adler of property in Camden, New Jersey. This matter is before the Court on Dranoff's Motion for Reconsideration ("Defendant's Motion") [Dkt. No. 71] of the Court's February 8, 2016 Opinion [Dkt. No. 68][1] (the "*Summary Judgment Opinion*") and Order [Dkt. No. 69] that, relevant to Defendant's Motion, granted-in-part and denied-in-part each of Dranoff's motion for summary judgment and Adler's motion for summary judgment. For the reasons that follow, Defendant's Motion will be **DENIED**.

---

[1] Reported at *Adler Eng'rs, Inc. v. Dranoff Props., Inc.*, Civ. No. 14-0921 (RBK/AMD), 2016 WL 528160 (D.N.J. Feb. 8, 2016). The Court will refer to the pagination of the version reported by Westlaw.

1

I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Court set out the lengthy factual background and procedural history of this case in its *Summary Judgment Opinion*, 2016 WL 528160, at *1–4. A summary of the relevant facts are recited herein.

A.     THE CONTRACT AND THE APPRAISAL PROCESS

Pursuant to a contract between Plaintiffs and Defendant, the parties had engaged in the process of determining a fair price for the sale of property at 129 Market Street, Camden, New Jersey 08102 (the "Property"). *Id.* at *1–3. The contract, generally speaking, required the parties to each choose their own appraisers with certifications from the Members Appraisers Institute ("MAI") to appraise the Property, and if their appraisals differed by more than 10%, to have the appraisers choose a third MAI-certified appraiser to provide a third appraisal. *Id.* at *1. Then, based on the three appraisals, a purchase price would be arrived at and confirmed by written notice from Defendant to Plaintiffs. *Id.*

Plaintiffs' appraiser, Eugene Pasymowski, valued the Property at $1,820,000, while Defendant's appraiser, John Lynch, valued the Property at $925,000. *Id.* at *2. Because these numbers were more than 10% apart, pursuant to the contract, the two appraisers selected a third appraiser. *Id.* After some problems in agreeing on the third appraiser, eventually Lee Romm was selected as the third appraiser, and valued the Property at $1,275,000. *Id.* Based on the terms of the contract, Mr. Pasymowski's valuation was discarded, and averaging Mr. Romm's and Mr. Lynch's valuation resulted in a purchase price of $1,100,000. *Id.* at *3. This price was communicated to Plaintiffs on February 14, 2008 via email, and Plaintiffs' attorney, Kenneth Roth, confirmed the price on or about the same day. *Id.*

On February 15, 2008, however, Mr. Roth rescinded his confirmation, explaining that he had "communicated agreement with the purchase price too quickly," and instead told Defendants they believed that Mr. Romm had failed to take into consideration facts pertinent to his appraisal. *Id.* Mr. Roth also conveyed these issues in a letter to Mr. Romm dated February 19, 2008. *Id.*

During this time period, Plaintiffs were also in discussions with their own appraiser, Mr. Pasymowski, in order to try to get him to reduce his appraisal value. *Id.* Once aware of Mr. Romm's appraisal, Julian Toneatto, a representative from Plaintiffs, informed Mr. Pasymowski that if his appraisal were lowered to around $1,600,000, then his appraisal would be part of determining the purchase price, which would result in an increased purchase price. *Id.*

On February 20, 2008, Defendant's counsel emailed Mr. Roth to terminate the contract, stating that Plaintiffs' "demand that the Romm Appraisal be revised is a blatant and material breach of the Agreement of Sale." *Id.* Mr. Roth replied later the same day that Plaintiffs believed both Mr. Romm and Mr. Lynch had "failed to adhere to the standards and guidelines of the relevant accrediting organizations by failing to take into consideration existing facts on the record as to the value of the Property and to use those facts or reject them as the appraisers see fit using their professional judgment." *Id.* Mr. Roth further replied that Plaintiffs would be willing to move on with the sale if Mr. Romm could explain why the issues they raised should not be considered or were irrelevant to his appraisal. *Id.*

Mr. Romm did reply a little under two weeks later, on March 4, 2008, explaining that the additional facts raised by Plaintiff did not impact his appraisal, but that based on a mathematical error he discovered, he was raising his appraisal by $10,000 to $1,285,000. *Id.* at *4. As the Court noted, "the parties continued to dispute the appraisals. Plaintiffs affirmed their position that the appraisals were inaccurate, and Defendant continued to assert that Plaintiffs 'refusal to

3

accept these arrangements continue[d] to constitute a material, intentional and willful default under the Agreement.'" *Id.* (alteration in quoting source).

At some point subsequently, Mr. Pasymowski did reduce his appraisal downward to $1,500,000, which Plaintiffs forwarded to Defendant on April 10, 2008. *Id.* Plaintiffs informed Defendant that they would be willing to go forward with a purchase price of $1,392,500—the average of Mr. Pasymowski's and Mr. Romm's revised appraisals. *Id.* Defendant rejected this, asserting that this was "a second deliberate attempt to manipulate the appraisal process under the Agreement of Sale." *Id.* Approximately six years later, Plaintiffs brought suit.

### B. THE COURT'S RULING

The crux of the cross motions for summary judgment was that each party believed the other had materially breached the contract, and each believed they had performed properly under the contract. *Id.* at *6. Defendant argued that because the contract was silent as to permitting challenges to the appraisers' valuations, the contract must be construed as not permitting any challenges. *Id.* Defendant cited to two cases which the Court discussed—a precedential opinion from the New Jersey Superior Court, Appellate Division, *Cap City Products co., Inc. v. Louriero*, 332 N.J. Super. 499 (App. Div. 2000), and an unpublished opinion from the same court, *Cablevision of Oakland, LLC v. CK Bergen Holdings, LLC*, No. A-2767-12, 2014 WL 923226 (N.J. Super. Ct. App. Div. Mar. 11, 2014) (per curiam).

The Court declined to agree with Defendant, instead relying on the reasoning espoused in *Leach v. Princeton Surgiplex, LLC*, No. A-6120-11, 2013 WL 2436045 (N.J. Super. Ct. App. Div. June 6, 2013) (per curiam) to find "it unreasonable to infer from the Contract's silence that the parties intended to waive all right to inquire as to the appraiser's methods no matter how incorrect or faulty the appraisals were." *Summ. J. Op.*, 2016 WL 528160, at *6. In

4

distinguishing *Cap City* and *Cablevision*, the Court also noted "[t]he fact that a *court* cannot evaluate the validity of an appraisal as a matter of law absent egregious error does not mandate that parties to a contract are also . . . foreclosed from raising concerns." *Id.* As a result, the Court rejected Defendant's position that the February 15, 2008 email from Plaintiffs' counsel was a material breach, finding that the email relayed concerns over Mr. Romm's apparent failure to consider information Plaintiffs believed he was required to consider under applicable guidelines for appraisers. *Id.* This led the Court to conclude that Plaintiffs could have breached the contract if they continued to refuse the purchase price after Mr. Romm had explained why Plaintiffs' objections did not affect his valuation, but Defendant did not provide the opportunity prior to terminating the agreement on its own. *Id.*

The Court went on to find that although Plaintiffs did not breach the express terms of the contract, "material issues of fact still exist as to whether Plaintiffs discharged their duties throughout the appraisal process in good faith." *Id.* at *7. Noting both that Defendants pointed to several communications between Plaintiffs' representative, Mr. Toneatto, and Plaintiffs' appraiser, Mr. Pasymowski, about revising his request prior to Defendant's termination and that Plaintiffs provided a sworn declaration to clarify Mr. Toneatto's intent, the Court found that the issue of intent was a factual determination left for the jury to decide. *Id.* As such, the Court denied summary judgment on the issue of breach of contract. *Id.* Defendant's Motion timely followed.[2]

---

[2] Defendant has also filed a reply brief and additional affidavit with its reply brief in support of their motion. (Def.'s Reply [Dkt. No. 73]; Korn Decl. [Dkt. No. 74].) Local Civil Rule 7.1(d)(3) clearly states: "No reply papers shall be filed, unless permitted by the Court, relating to the following motions: . . . Reconsideration under L.Civ.R. 7.1(i) . . . ." Defendant has sought no permission from the Court, and likewise none has been granted on the Court's own motion. Defendant's Reply will thus not be considered.

## II. JURISDICTION

Plaintiffs' claims are based on New Jersey state law. Plaintiffs are each New Jersey corporations with their principal place of business located in New Jersey, and Defendant is a Pennsylvania corporation with its principal place of business located in Pennsylvania. (Third Am. Compl. [Dkt. No. 25] ¶¶ 10–14.) Plaintiffs claims are for more than $75,000, thus the Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).

## III. LEGAL STANDARD

In this District, Local Civil Rule 7.1(i) governs motions for reconsideration. Local Civil Rule 7.1(i) will apply rather than Federal Rule of Civil Procedure 59 where no final judgment has been entered, but only a partial grant or denial of summary judgment. *See Warner v. Twp. of S. Harrison*, 885 F. Supp. 2d 725, 747–48 (D.N.J. 2012). However, the standard for evaluating the request is the same. *Id.*

"The scope of a motion for reconsideration . . . is extremely limited." *Blystone v. Horn*, 664 F.3d 397, 415 (3d Cir. 2011). "The purpose of a motion for reconsideration is 'to correct manifest errors of law or fact or to present newly discovered evidence.'" *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010) (citing *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)). A motion for reconsideration "must rely on one of three grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice." *Id.* (citing *N. River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)).

"A party seeking reconsideration must show more than a disagreement with the Court's decision, and recapitulation of the cases and arguments considered by the court before rendering its original decision fails to carry the moving party's burden." *Facteon, Inc. v. Comp Care*

*Partners, LLC*, Civ. No. 13-6765, 2015 WL 519414, at *1 (D.N.J. Feb. 9, 2015) (quoting *G–69 v. Degnan*, 748 F. Supp. 274, 275 (D.N.J. 1990)). "A motion for reconsideration should not provide the parties with an opportunity for a second bite at the apple." *Tishcio v. Bontex, Inc.*, 16 F. Supp. 2d 511, 533 (D.N.J. 1998) (citation omitted).

## IV.  DISCUSSION

Defendant raises three challenges to the Court's decision: (1) the Court improperly relied on *Leach*; (2) the Court overlooked factual evidence establishing that Plaintiffs did breach the contract; and (3) the Court overlooked multiple legal arguments raised by Defendant in its summary judgment papers. (*See* Def.'s Mot. Br. [Dkt. No. 71-2] at 1–2.) None of these arguments relies on an intervening change in controlling law or the availability of new evidence, so the only basis for Defendant's Motion is "the need to correct clear error of law or prevent manifest injustice." For the reasons that follow, Defendants' Motion will be denied.

### A.     THE COURT'S RELIANCE ON *LEACH* WAS PROPER

Defendant challenges the Court's reliance on the unpublished decision of the Appellate Division in *Leach*. Defendant argues that *Leach* improperly relied on *Elberon Bathing Co. v. Ambassador Insurance Co.*, 77 N.J. 1 (1978), based on an apparent abrogation of *Elberon* by *Tretina Printing, Inc. v. Fitzpatrick & Assocs., Inc.*, 135 N.J. 349 (1994) (per curiam), recognized by the Appellate Division in *Cap City*. (Def.'s Mot. Br. at 5–6). Defendant additionally argues that the Appellate Division has held repeatedly in similar context as the contract between the parties here that if the contract does not provide for a method to challenge the appraiser's valuation, then any challenge is foreclosed, citing to *Cablevision* as well as *Cardoso v. Goldberg*, No. A-4904-05, 2007 WL 4062187 (N.J. Super. Ct. App. Div. Nov. 19, 2007) (per curiam) (*Id.* at 6–8.) Defendant also maintains that *Leach* is distinguishable from the

facts here.  (*Id.* at 3–5.)  Plaintiffs respond that *Elberon* and *Leach* both remain good law, that the Court did not misinterpret or misapply *Leach*, and that the factual discrepancies pointed to by Defendants are irrelevant.  (Pls.' Opp. [Dkt. No. 72] at 4–11.)

### 1. *Elberon* Remains Good Law

Defendants are incorrect that *Elberon* is not good law in New Jersey.  A discussion of the relevant case law is necessary to understand the arguments presented.  In *Elberon*, the New Jersey Supreme Court held that appraisers should utilize the "broad evidence rule" to "consider all evidence an expert would consider relevant to an evaluation."  77 N.J. at 13.  Finding that an appraiser "can make no legal determinations," the court concluded that a reviewing court was permitting to set aside an appraiser's award where there was legal error.  *Id.* at 15–16.  The court went on to specifically distinguish appraisal and arbitration, explaining that while arbitration is a "quasi-judicial proceeding . . . . [a]ppraisers act on their own skill and knowledge, need not be sworn and need hold no formal hearings so long as both sides are given an opportunity to state their positions."  *Id.* at 16–17.

A little over fifteen years later, in 1994, the New Jersey Supreme Court in a per curiam opinion explained that under the New Jersey Arbitration Act, N.J.S.A. 2A:24-1, et seq., a court may only vacate arbitration awards "for fraud, corruption, or similar wrongdoing on the part of the arbitrators."  *Tretina*, 135 N.J. at 358 (quoting *Perini Corp. v. Greate Bay Hotel & Casino, Inc.*, 129 N.J. 479, 548 (1992) (Wilentz, C.J., concurring)).  This displaced the standard set forth by the plurality opinion in *Perini* that permitted reversal for "egregious mistakes of law."  *Id.* at 356–57.  However, nowhere in *Tretina* does the court cite to *Elberon* or mention the word "appraise" or any derivative thereof.

Six years later in 2000, when the Appellate Division recognized an abrogation of *Elberon* by *Tretina* in *Cap City*, the court reasoned that the opinion in *Tretina* "lays out a broad, strong policy, based on the concurring opinion presented by Chief Justice Wilentz in *Perini*." *Cap City*, 332 N.J. Super. at 508. The court in *Cap City* held that decisions of appraisers and arbitrators should be reviewed by courts using the same standard of review, and refused to recognize a distinction between the two. *Id.* at 508–09. The court went on to state that "[t]o the extent that statements in prior cases . . . suggest a different principle, or reach a different conclusion because the independent party performing the decision-making function is termed something other than an arbitrator, those cases must be deemed modified by the subsequent holding in *Tretina*." *Id.* at 508. However, the court in *Cap City* also reached this conclusion, after generally finding that the activity at issue was more properly deemed an arbitration rather than an appraisal, and in contract language that the parties would use a third party "to arbitrate a binding settlement." *Id.* at 507–09.

A mere two days later, a different panel of the Appellate Division explicitly relied on *Elberon* to explain that a court may set aside an award where "the appraiser for the insured" failed to consider certain facts in his valuation. *Ward v. Merrimack Mut. Fire Ins. Co.*, 332 N.J. Super. 515, 528–29 (App. Div. 2000) (citing *Elberon*, 77 N.J. at 15–16). The court in *Ward* mentioned neither *Tretina* nor *Cap City*, and was content to rely on *Elberon* as stated. *Id.* The court in *Ward* also did not suggest that decisions of arbitrators and appraisers would be reviewed under the same standard of review by a court. *Id.*

This disparity was noted by the Tenth Circuit Court of Appeals when applying New Jersey law in *Salt Lake Tribune Publishing Co., LLC v. Management Planning, Inc.*, 454 F.3d 1128 (10th Cir. 2006). The Tenth Circuit in affording *Cap City* less persuasive value noted,

9

"[t]he Appellate Division's analysis in *Cap City* conflicts with several decisions from the New Jersey Supreme Court where it has distinguished arbitrations and appraisals based on whether the decision-maker has authority to make legal determinations." *Salt Lake Tribune*, 454 F.3d at 1135–36. The court went to remark that the decision in *Ward* "further dilutes *Cap City*'s persuasive power." *Id.* at 1136. The court ultimately held, "The New Jersey Supreme Court has not departed from its 1978 ruling in *Elberon*. Further, we have no reason to predict that the New Jersey Supreme Court would overrule *Elberon* because it has given no indication it would do so." *Id.*

The court in *Leach* also noted the disparity, and relied upon the reasoning of the Tenth Circuit in *Salt Lake Tribune* to determine that *Elberon* was still good law, and that "our standards for setting aside an arbitration award—i.e., fraud, corruption, or similar wrongdoing—although applicable, are not the only circumstances that may form a challenge to an appraisal designed to fix a contractual term." *Leach*, 2013 WL 2436045, at *4 (citation omitted). The court continued, "[i]n short, the law views an appraisal process like that adopted by the parties here differently than the arbitration process. An aggrieved party may challenge an appraisal not only on the grounds recognized in *Tretina* for attacking arbitration awards, but also when the appraiser has made a mistake of law or when the appraiser has misapprehended the facts or issues presented." *Id.* at *5.

However, the court in *Cablevision*, issued about nine months later, adhered to the determination of the court in *Cap City*, although only as it related to a "business valuation appraiser," and rejected the reasoning of *Salt Lake Tribune* in a footnote. *Cablevision*, 2014 WL 923226, at *5 & n.4. Aside from one other unreported decision of the Appellate Division cited to by Defendant, *Cardoso*, which was decided in 2007 before either *Leach* or *Cablevision*, this

10

Court is unable to find any other case that follows the *Cap City* court in this manner.  On the other hand, at least one unpublished opinion from the Appellate Division has followed *Ward* in using the standards set forth in *Elberon* and recognizing no abrogation.  *See Moscaritolo v. Akincibasi*, No. A-4670-06, 2009 WL 2913952, at *10 (N.J. Super. Ct. App. Div. Sept. 14, 2009) (per curiam), *cert. denied*, 201 N.J. 155 (2010).  Furthermore, cases from the Appellate Division and other courts of this district have continued to cite *Elberon* without noting any abrogation after the *Cap City* decision.  *See, e.g.*, *Turkmany v. Excelsior Ins. Co.*, Civ. No. 12-142 (ES), 2014 WL 3556390 (D.N.J. July 18, 2014); *Puhlovsky v. Rutgers Cas. Ins. Co.*, No. A-2162-13, 2014 WL 9967355 (N.J. Super. Ct. App. Div. July 1, 2015) (per curiam); *Crum & Forster Ins. Cos. v. Mecca & Sons Trucking Corp.*, No. A-3570-06, 2009 WL 2917898 (N.J. Super. Ct. App. Div. Sept 9, 2009) (per curiam), *cert. denied*, 201 N.J. 439 (2010).

When sitting in diversity, it is the job of the federal court "to follow state law as announced by the highest state court."  *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 253 (3d Cir. 2010) (internal quotations omitted).  In the absence of a decision from the highest court, the federal court may turn to the intermediate appellate court, and "[w]here an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise."  *Id.* at 254 (internal quotations omitted).

Being fully cognizant of these constraints, the Court concludes that Defendant's contentions for why *Elberon* is no longer good law fail.  The opinion of the Appellate Division recognizing abrogation in *Cap City* appears to be an aberration.  As recognized by the Tenth Circuit in *Salt Lake Tribune* and a later panel of the Appellate Division in *Leach*, the rationale

11

underpinning the abrogation fails.  Although the panel in *Cablevision* chose to follow *Cap City*, the panel provided no reasoning for its decision.  *See Cablevision*, 2014 WL 923226, at *5 & n.4. The panel in *Cardoso* did not reverse the trial court judge for relying on the higher standard in *Cap City*, but never expressly found *Elberon* to be abrogated and even appears to consider that the standard in *Elberon* may be appropriate.  *See Cardoso*, 2007 WL 4062187, at *5.  In light of this exhaustive review of the case law, this Court adopts the reasoning of the courts in *Salt Lake Tribune* and *Leach* to conclude that *Elberon* remains good law.

                         **2.**      **Plaintiffs Were Permitted to Question the Appraiser's Determination**

Defendant further argues that based on the decisions of the Appellate Division in *Cablevision* and *Cardoso*, "there is no room to challenge the procedure other than that provided for in the contract." (Def.'s Mot. Br. at 6.)  However, Defendant's challenge fails here, too.

Defendant is correct that *Cablevision* involves a similar method of appraisal, wherein each party chose an MAI-certified appraiser, and if the two appraisers could not agree, they would appoint a third appraiser to set the value.  *Cablevision*, 2014 WL 923226, at *1.  However, that is where the similarities end.  The contract between the *Cablevision* parties "state[d] that the third appraiser's decision 'shall be final.'" *Id.*  Ultimately, the parties required a third appraiser, who set the valuation below either of the parties' appraisers, and the defendant refused to execute the agreement based on the value set by the third appraiser. *Id.* at *2.  The defendant "instead proposed various revisions" including more than doubling the value set by the third appraiser. *Id.*  Plaintiff then sued to enforce the third appraiser's valuation, and defendant argued that the third appraiser had failed to comply with the terms of the contract in the number of comparable properties which he analyzed.  *Id.*  The trial court rejected defendant's arguments as meritless, albeit creative based on the contract language, and the appellate court rejected the argument by

defendant that "the court was empowered to review the appraiser's decision for an error of law, or a misinterpretation of the parties' lease." *Id.* at *3–5. The appellate court also relied on the fact that the parties "expressly agreed that the appraiser's decision 'shall be final.'" *Id.* at *5.

Similarly, in *Cardoso*, the parties used an appraiser system wherein each party to the agreement selected one MAI-certified appraiser who together selected a third appraiser. *Cardoso*, 2007 WL 4062187, at *2. However, only the third appraiser would actually provide an appraisal value, and not either of the appraisers selected by the parties. *Id.* The appraisal received was then well below the expected amount, being $50,000 below the value of an outstanding mortgage and almost $300,000 below the value of the prior year's tax assessment. *Id.* The plaintiff then sued seeking, among other avenues of relief, to invalidate the appraisal "because it deviated from recognized appraisal standards, failed to rely on appropriate facts and data, and included an erroneous analysis of value." *Id.* at *3. The trial court denied relief, relying on *Cap City*, and plaintiff appealed. *Id.* at *5. The appeals court noted that plaintiff "advance[d] no facts to support a contention that [the appraiser] misapplied the law or failed to consider relevant factual evidence. He suggests nothing to sustain a finding of fraud or other legal excuse to set aside [the] appraisal." *Id.* The court, relying on the terms of the agreement rejected plaintiff's challenge and found that "[h]ad the parties intended to preserve the right to challenge the opinion of the single appraiser, such a provision could have been inserted in the agreement." *Id.* at *6 (citing *Mt. Hope Dev. Assoc. v. Mt. Hope Waterpower Project, L.P.*, 154 N.J. 141, 149 (1998)).

Both *Cablevision* and *Cardoso* are distinguishable on the facts from the instant dispute. The contract in question here provided for no such finality from Mr. Romm's appraisal, and Plaintiffs never filed suit to directly call Mr. Romm's appraisal into question. Rather, Plaintiffs

identified what they believed was an oversight by Mr. Romm, called the oversight to Mr. Romm's attention, and requested that Mr. Romm explain why it was not an oversight or adjust his appraisal accordingly. Mr. Romm then complied by explaining why it was not an oversight. As the Court originally stated, and restates here, "'it cannot be seriously argued that the appraiser is entitled to determine fair market value by spinning a wheel and flipping a coin, or that the appraiser may consider less than all relevant evidence, or that no party could question a mathematical error in the appraiser's calculations.'" *Summ. J. Op.*, 2016 WL 528160, at \*6 (quoting *Leach*, 2013 WL 2436045, at \*2.)

Additionally, as noted by Plaintiffs, "[e]ven if Defendant is correct that an appraiser's determination is entitled to the same deference given an arbitrator's award, that fact does not lead to the conclusion that Plaintiffs breached the Agreement by requesting that the appraisers consider new facts." (Pls.' Opp. at 5.) As the Court made clear, "[t]he fact that a *court* cannot evaluate the validity of an appraisal as a matter of law absent egregious error does not mandate that *parties* to a contract are also . . . foreclosed from raising concerns." *Summ. J. Op.*, 2016 WL 528160, at \*6 (first emphasis in original, second emphasis added). Just as parties may request in settlement negotiations that which the court may not provide, so, too, may a party request outside of litigation what it may not be given in litigation.

To the extent Defendant attempts to further distinguish *Leach* based on the facts, this is improper on a motion for reconsideration. *See Red Roof Franchising LLC, Inc. v. AA Hosp. Northshore, LLC*, 937 F. Supp. 2d 537, 547 (D.N.J. 2013) ("The law in this District is clear that a motion for reconsideration is improper when it is used to ask the Court to rethink what it had already thought through—rightly or wrongly." (internal quotation marks and modification omitted)), *aff'd sub nom. Red Roof Franchising, LLC v. Patel*, 564 F. App'x 685 (3d Cir. 2014).

14

Further, each of their attempts to distinguish *Leach* fails, as the issues raised are irrelevant when considering that Defendant unilaterally terminated the contract within five days of Plaintiffs communicating their concerns over Mr. Romm's valuation.

In sum, *Leach* was based on good law, and it was proper for this Court to consider *Leach* in evaluating the parties' claims; neither *Cablevision* nor *Cardoso* mandates a different result; and the holding of this Court neither creates manifest injustice nor presents any risk of the slippery slope of horrors Defendant predicts will fall upon parties to contracts in New Jersey. Defendant's Motion will be denied with respect to the argument that the Court's reliance on *Leach* was a clear error of law.

### B.   THE COURT DID NOT OVERLOOK FACTUAL EVIDENCE REGARDING PLAINTIFFS' ALLEGED BREACH

Defendant further argues that the Court overlooked factual evidence of continuing conversations between Plaintiffs and Defendant regarding the purchase price of the property beyond Defendant's February 20, 2008 termination of the contract. (Def.'s Mot. Br. at 8–9.) Plaintiffs respond that not only did the Court discuss communications between the parties subsequent to the February 20, 2008 termination, they are not dispositive of whether Plaintiffs performed at the time of Defendant's termination. (Pls.' Opp. at 11–12.) The Court agrees with Plaintiffs.

What is relevant to the question of whether Plaintiffs were in breach at the time Defendant terminated the contract is what Plaintiffs had done before the time of termination. The Court remarked that "it is quite possible that Plaintiffs would have been in breach of the Agreement had they continued to refuse the purchase price *after* [Mr.] Romm explained that Plaintiffs' objections did not affect his valuation, Defendant did not give them an opportunity prior to terminating the Agreement on its own." *Summ. J. Op.*, 2016 WL 528160, at *6. The

15

operative time period was the time between Plaintiffs' letter to Defendant and Mr. Romm and when Defendant terminated the contract, *not* after Mr. Romm responded to Plaintiffs' letter. The continuing communications beyond February 20, 2008 are therefore irrelevant.

Defendant does not challenge the Court's conclusion that they terminated the contract on February 20, 2008. Allegations in Defendant's Motion that the parties continued to act as though they had a contract, (*see* Def.'s Mot. Br. at 8–9), are therefore also irrelevant. Defendant's Motion will be denied as to the claim that the Court overlooked factual evidence.

### C. THE COURT DID NOT OVERLOOK DEFENDANT'S LEGAL ARGUMENTS

Finally, Defendant argues that the Court overlooked multiple of Defendant's legal arguments that were raised in Defendant's original moving papers in support of its own motion for summary judgment, and in Defendant's opposition to Plaintiffs' original motion for summary judgment. (Def.'s Mot. Br. at 9–10.) The three issues Defendant alleges the Court overlooked are (1) the parties acted as though there was still a contract; (2) Defendant was not afforded an opportunity to cure; and (3) Plaintiffs' failure to proceed to closing was an independent reason to allow for termination. (*Id.*) Plaintiffs respond that each argument lacks merit. (Pls.' Opp. at 12–14.) The Court again agrees with Plaintiffs.

On the issue of whether the parties acted as though there was still a contract, the sole case cited to by Defendant in support of this argument in both the original papers and the instant motion is *Albanese v. Grant*, No. A-0112-04, 2005 N.J. Super. Unpub. LEXIS 548, 2005 WL 3092805 (App. Div. Nov. 21, 2005) (per curiam). However, *Albanese* is distinguishable from the situation between the parties here. In *Albanese*, a contract for the sale of real property required buyer to obtain subdivision approval from the planning board within 150 days of the execution of a contract. *Albanese*, 2005 WL 3092805, at *2. However, when the buyer

16

submitted paperwork to obtain subdivision, it was revealed that there were two open tax liens and sewer use fees outstanding. *Id.* Once buyer was made aware of the tax liens, buyer's attorney and seller's attorney worked together to determine how best to solve the issue and advance the sale. *Id.* at *3. The result was that the subdivision was not approved until well after the 150-day period. *Id.* After buyer initiated litigation on another issue, seller raised a violation of the 150-day requirement as an issue of breach, which the trial court rejected. *Id.* at *6. The appeals court affirmed this, finding that the attorneys working together while the 150-day period expired and failing to raise a concern about the 150-day requirement estopped seller from raising the issue. *Id.* at *6–7.

The facts here could not be more dissimilar. To characterize the communications between Defendant and Plaintiffs as "working together" would be illogical, as the parties were clearly at loggerheads over who was acting properly under the contract. Further, the parties were explicitly raising the issues of breach and termination of the contract to each other. As such, *Albanese* is inapposite. There was no evidence presented in the original moving papers to demonstrate that the parties continued to act as though there was a contract in light of Defendant's termination of the agreement.

As to whether Defendant should have been afforded an opportunity to cure, Defendant could not be afforded an opportunity to cure when Defendant terminated the contract. Even if Defendant could have rescinded their termination, an opportunity was given to Defendant to do so when Plaintiffs' counsel responded to Defendant's February 20, 2008 termination notice. *See Summ. J. Op.*, 2016 WL 528160, at *3. Thus, the argument that Defendant should have been afforded an opportunity to cure was moot.

With respect to Defendant's argument that the Court neglected to consider Plaintiffs' refusal to proceed to closing, the Court found that Plaintiffs did *not* refuse to proceed to closing before Defendant terminated the contract. *See id.* at *6. As such, this argument was also moot. Accordingly, Defendant's Motion will be denied as to the claim that the Court overlooked Defendant's legal arguments.

## V.  CONCLUSION

For the foregoing reasons, Defendant's Motion will be DENIED. An appropriate order accompanies this opinion.

Date: July  5th , 2016

 s/ Robert B. Kugler
ROBERT B. KUGLER, U.S.D.J.